# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ROBERT LEGG, on behalf of
himself and all others similarly situated,

                    Plaintiff,

      v.

LEADERS LIFE INSURANCE
COMPANY

                Defendant.

Case No. CIV-21-655-D

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT LEADERS LIFE INSURANCE COMPANY'S
<u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ...................................................................................................... 1

II.  RELEVANT FACTUAL ALLEGATIONS ................................................................. 3

III. ARGUMENT ............................................................................................................. 5

    A.   Plaintiff's Complaint Should Be Dismissed for Lack of Article III Standing ....... 5

        1.   Plaintiff Bears the Burden of Establishing Standing .......................................... 5

        2.   Plaintiff Must Show an Injury-in-Fact that is Actual or Imminent ................... 5

        3.   By Relying on Generalized Fears of Future Harm, Plaintiff Has Failed to Show a Concrete Injury-in-Fact that Is Actual or Imminent ....................................... 6

        4.   Mitigation Efforts and Loss of Value in Personal Information Do Not Establish an Injury-in Fact Under Article III .................................................................. 12

    B.   Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Based ........... 13

        1.   Plaintiff Has Failed to State a Claim for Negligence ....................................... 14

        2.   Plaintiff Has Failed to State a Claim for Breach of Implied Contract ............. 15

        3.   Plaintiff Has Failed to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing ............................................................................................. 17

        4.   Plaintiff Has Failed to State a Claim under the Maryland Consumer Protection Act ................................................................................................................... 18

        5.   Plaintiff Is Not Entitled to Declaratory or Injunctive Relief ........................... 19

    C.   Alternatively, Immaterial and Impertinent Allegations Should Be Stricken ....... 22

IV. CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Limousine Serv., Inc. v. Serv. Ins. Agency, LLC*,
   2017 WL 3475669 (D. Md. Aug. 11, 2017) ................................................................. 15

*Alexander v. Smith & Nephew, P.L.C.*,
   98 F. Supp. 2d 1299 (N.D. Okla. 2000) ...................................................................... 14

*Arnold ex rel. Chesapeake Energy Corp. v. McClendon*,
   2012 WL 4483159 (W.D. Okla. Sept. 28, 2012) ......................................................... 13

*Ashcroft v. Iqbal*,
   556 U.S. 662, (2009) ............................................................................................. 13, 21

*Attias v. Carefirst, Inc.*,
   865 F.3d 620 (D.C. Cir. 2017) ..................................................................................... 11

*Bank of Am. Corp. v. Gibbons*,
   173 Md. App. 261 (2007) ............................................................................................. 16

*Barr v. Flagstar Bank, FSB*,
   303 F. Supp. 3d 400 (D. Md. 2018) ............................................................................. 18

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ....................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 13, 21

*Chambliss v. Carefirst, Inc.*,
   189 F. Supp. 3d 564 (D. Md. 2016) ............................................................................. 16

*Chassels v. Krepps*,
   235 Md. App. 1 (2017) ................................................................................................. 14

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .................................................................................................. 5, 6

*Clark v. Bank of America, N.A.*,
   2020 WL 902457 (D. Md. 2020) .................................................................................. 18

*Comer v. Preferred Risk Mut. Ins. Co.*,
   991 P.2d 1006 (Okla.1999) ................................................................ 14

*Galaria v. Nationwide Mut. Ins. Co.*,
   663 F. App'x 384 (6th Cir. 2016) ...................................................... 10

*Hatton v. Combs*,
   793 Fed. App'x 801 (10th Cir. 2019) ................................................ 20

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
   892 F.3d 613 (4th Cir. 2018) ............................................................ 11

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021) ........................................................ 11

*In re Rutter's Inc. Data Sec. Breach Litig.*,
   511 F. Supp. 3d 514 (M.D. Pa. 2021) .............................................. 12

*In re Sci. Applications Int'l (SAIC)Backup Tape Data Theft Litig.*,
   45 F. Supp. 3d 14 (D.D.C. 2014) ..................................................... 13

*Irwin v. Jimmy John's Franchise, LLC*,
   175 F. Supp. 3d 1064 (C.D. Ill. 2016) ............................................. 16

*Jacques v. First Nat'l Bank*,
   307 Md. 527, 515 A.2d 756 (1986) .................................................. 15

*Khan v. Children's National Health System*,
   188 F. Supp. 3d 524 (D. Md. 2016) ................................................. 13

*Koch v. Koch Indus., Inc.*,
   203 F.3d 1202 (10th Cir. 2000) ........................................................ 18

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010) .......................................................... 11

*Lewert v. P.F. Chang's China Bistro, Inc.*,
   819 F.3d 963 (7th Cir. 2016) ............................................................ 12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..................................................................... 5, 6

*MBA Commercial Constr., Inc. v. Roy J. Hannaford Co.*,
   818 P.2d 469 (Okla. 1991) ................................................................ 14

*McAlpine v. Maroney*,
   2005 WL 3236487 (W.D. Okla. Nov. 29, 2005)............................................5

*McGraw v. Loyola Ford, Inc.*,
   124 Md. App. 560, 723 A.2d 502 (1999) ....................................................19

*McMorris v. Carlos Lopez & Associates, LLC*,
   995 F.3d 295 (2d Cir. 2021) ........................................................................11

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
   879 F.3d 339 (D.C. Cir. 2018)........................................................................9

*Pahlka v. Chicago, R.I. & P. Ry. Co.*,
   161 P. 544 (Okla. 1916) ..............................................................................14

*Peroti v. Williams*,
   267 A.2d 114 (Md. 1970) .............................................................................15

*Reece v. AES Corp.*,
   638 F. App'x 755 (10th Cir. 2016).............................................................14

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) .......................................................................10

*Roberson v. Ginnie Mae REMIC Tr. 2010 H01*,
   973 F. Supp. 2d 585 (D. Md. 2013) .............................................................17

*SFF-TIR, LLC v. Stephenson*,
   250 F. Supp. 3d 856 (N.D. Okla. 2017) ......................................................22

*Simpson Props., Inc. v. Oexco, Inc.*,
   916 P.2d 853 (Okla. Civ. App. 1996)...........................................................16

*Spaulding v. Wells Fargo Bank, N.A.*,
   714 F.3d 769 (4th Cir. 2013)........................................................................18

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016) ................................................................................5, 6

*State Farm Fire & Cas. Co. v. Mhoon*,
   31 F.3d 979 (10th Cir. 1994)........................................................................20

*TransUnion LLC v. Ramirez*,
   141 S.Ct. 2190 (2021) ...........................................................................*passim*

iv

*Wathor v. Mut. Assurance Adm'rs, Inc.*,
   87 P.3d 559 (Okla. 2004) ................................................................. 17

*Wells v. Johnson & Johnson*,
   2021 WL 3578191 (W.D. Okla. Aug. 12, 2021) ............................... 18, 19

**<u>Statutes</u>**

28 U.S.C. § 2201 ............................................................................... 19

28 U.S.C. § 2202 ............................................................................... 20

**<u>Rules</u>**

Federal Rule of Civil Procedure 9(b) ................................................ 18

Federal Rule of Civil Procedure 12(b)(1) .................................. 1, 5, 23

Federal Rule of Civil Procedure 12(b)(6) ..................................... 2, 23

Federal Rule of Civil Procedure 12(f) ...................................... 3, 22, 23

## I.    INTRODUCTION

Plaintiff Robert Legg has not been the victim of identity theft. This was true when he filed his original Complaint and remains true with the filing of his First Amended Complaint. As with the original Complaint, the First Amended Complaint contains no allegations that identity thieves have used his personal information to commit fraud or engage in any other scheme. There continue to be no factual allegations demonstrating an actual and imminent threat Plaintiff will be the victim of identity theft. Because there are no allegations establishing Plaintiff has sustained an injury-in-fact, Plaintiff does not have standing to bring this putative class action lawsuit under Article III of the United States Constitution. This case should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

When Plaintiff purchased insurance products from Defendant Leaders Life Insurance Company ("Leaders Life"), he provided certain personal information to Leaders Life. In November 2020, a cybercriminal infiltrated Leaders Life's computer network with malware, and certain folders containing the personal information of Leaders Life's customers may have been exposed during this attack. Although there is no indication that Plaintiff's information was accessed or misused by any person, Leaders Life notified every individual whose information could have been affected by this incident.

Rather than claiming to be a victim of identity theft or to have suffered any other harm, Plaintiff's First Amended Complaint focuses on the dangers of identity theft. These generalized allegations have nothing to do with Plaintiff or the cyberattack Leaders Life

suffered. Instead, the specific allegations concerning Plaintiff show that he suffered no injury and lacks Article III standing.

Conceding he has not been the victim of identity theft, Plaintiff hopes the alleged risk of future identity theft will suffice to establish standing. It cannot. In a recent decision, the Supreme Court addressed when the risk of future harm may satisfy the requirement that a plaintiff suffer a particularized, concrete injury that is actual or imminent in order to have standing under Article III. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021). According to the Supreme Court, only when seeking *injunctive relief* may a plaintiff may rely on the *risk of future injury*, provided that risk is "sufficiently imminent and substantial." *Id*. at 2210 (emphasis added); *see also id*. at 2222 (Thomas, J., dissenting) ("the risk of future harm on its own does not support Article III standing for the plaintiffs' damages claim … [a]ccording to the majority, an elevated risk of harm simply shows that a concrete harm is imminent and thus may support only a claim for injunctive relief."). By contrast, when seeking monetary damages, a plaintiff must instead show that the harm has actually materialized. *Id*. at 2211. Plaintiff has not pled facts that meet either of these standards. As a result, Plaintiff lacks Article III standing to pursue his claims.

Even if Plaintiff had standing, the facts alleged fail to state a claim under any of the causes of action set forth in the First Amended Complaint, requiring dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

Finally, the First Amended Complaint is overwhelmed with immaterial and impertinent allegations relating to identity theft generally, with no connection to the

2

cyberattack Leaders Life suffered. If the Court does not dismiss the First Amended Complaint, it should strike this improper content pursuant to Rule 12(f).

## II.   RELEVANT FACTUAL ALLEGATIONS

Leaders Life is a "well-respected national life insurance company" operating in 11 states. First Am. Compl. ¶¶ 10-11. Leaders Life is headquartered in Tulsa and has a "substantial presence" in Oklahoma City. *Id.* ¶ 10. Plaintiff is a Maryland resident who has purchased insurance products from Leaders Life over the past two decades. *Id.* ¶ 12. In purchasing insurance from Leaders Life, Plaintiff provided Leaders Life with certain personal information. *Id.* ¶ 58.

On November 27, 2020, Leaders Life discovered that cybercriminals had accessed portions of its computer network and infected it with malware. *Id.* ¶ 21. Leaders Life "immediately took systems offline and, with the assistance of third-party forensic specialists, launched an investigation to determine the nature and scope of the incident." *Id.* That investigation confirmed that certain folders "may have been accessed or removed" from Leaders Life's network from November 25 through November 27, 2020. *Id.* Leaders Life then "undertook a lengthy and time-intensive, thorough review of the potentially impacted folders and [its] internal files and systems in order to identify the information that was potentially impacted and to whom it related." *Id.* As part of this review, Leaders Life engaged a third-party firm to "programmatically and manually review the large volume of files at issue to identify impacted individuals and the types of data associated with those individuals." *Id.* During this time, Leaders Life also reviewed its own databases. *Id.* On

March 31, 2021, Leaders Life "first determined that one or more of the potentially impacted folders included protected information related to individuals." *Id.*

On May 19, 2021, Leaders Life and its third-party review team completed their review and "determined the scope of impacted individuals and the types of protected data associated with those individuals as a result of the extensive internal review." *Id.* Leaders Life worked diligently to notify potentially impacted individuals, including Plaintiff. *Id.* The information related to Plaintiff that may have been affected by the data security incident included his name, date of birth, tax ID number, and/or his Social Security number. *Id.* Leaders Life also assured Plaintiff that "there is no indication that your specific information was accessed or misused." *Id.* Plaintiff seeks to represent a nationwide class composed of all individuals who received a notice letter stating that their personal information may have been compromised as a result of the data security incident or, alternatively, a class composed of all Maryland residents who received a notice letter stating that their personal information may have been compromised as a result of the data security incident. *Id.* ¶ 74.

There are no allegations in the First Amended Complaint that Plaintiff has been the victim of identity theft or fraud as a result of this incident, or that he suffered any other type of harm.

### III.    ARGUMENT

#### A.  Plaintiff's Complaint Should Be Dismissed for Lack of Article III Standing

##### 1.    Plaintiff Bears the Burden of Establishing Standing

Article III limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. To have standing under Article III, a plaintiff must show each of the following elements: (1) an injury-in-fact; (2) a traceable causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id*. at 560.

Standing is a jurisdictional matter, so a motion to dismiss for lack of standing is properly brought under Rule 12(b)(1). *McAlpine v. Maroney*, No. 05-1225, 2005 WL 3236487, at *1 (W.D. Okla. Nov. 29, 2005) (internal citation omitted). "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion*, 141 S. Ct. at 2207. Although *TransUnion* was decided after a factual record had been established at trial, a plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation," including at the pleading stage. *Lujan*, 504 U.S., at 561

##### 2.    Plaintiff Must Show an Injury-in-Fact that is Actual or Imminent

To have standing to sue, a plaintiff must have suffered an injury-in-fact that is concrete, particularized, and actual or imminent, not merely conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016); *Clapper v. Amnesty Int'l USA*, 568

U.S. 398, 416 (2013). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S.Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1. As for concreteness, "[a] concrete injury must be *de facto*; that is, it must actually exist." *Id.* (internal citations and quotation marks omitted). In other words, it must be "real, and not abstract." *Id.* (internal citations and quotation marks omitted). Because an injury-in-fact cannot be conjectural or hypothetical, mere "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion*, 141 S.Ct. at 2203.

### 3. By Relying on Generalized Fears of Future Harm, Plaintiff Has Failed to Show a Concrete Injury-in-Fact that Is Actual or Imminent

Plaintiff has failed to carry his burden to show he has standing to pursue this case under Article III. It is undisputed that Plaintiff has not suffered any actual injury such as identity theft, and Plaintiff has also failed to show a risk of future harm that is sufficient to establish standing to seek damages or injunctive relief.

First, the First Amended Complaint does not allege that Plaintiff was a victim of identity theft, financial fraud, or any other harm. Indeed, at the outset of his First Amended Complaint, after noting one must provide certain personal information when purchasing insurance from Leaders Life, Plaintiff contends that "[i]dentity thieves can use this information to fraudulently open new accounts, access existing accounts, perpetrate identity fraud or impersonate victims in myriad schemes, all of which can cause grievous financial harm, negatively impact the victim's credit scores for years, and cause victims to spend countless hours mitigating the impact." First Am. Compl. ¶ 2. If any of these

misdeeds or potential related harms occurred here, Plaintiff surely would have stated so. Yet according to the First Amended Complaint, no identity thief has opened an account in Plaintiff's name, accessed his existing accounts, or caused any other harm to Plaintiff. Thus, Plaintiff has failed to show any already-materialized harm that can establish standing under Article III.

Second, Plaintiff has failed to show a risk of any future harm that can confer standing. In the recently issued *TransUnion* opinion, the Supreme Court clarified the standard that a plaintiff must meet when seeking to establish standing on the basis of a potential future injury: A class of 8,185 individuals had brought claims against TransUnion, a credit reporting agency, for violation of the Fair Credit Reporting Act. 141 S.Ct. at 2200. Although TransUnion had processed inaccurate credit reports for all class members, it only disclosed the reports of 1,835 class members to third-party businesses. *Id*. The Supreme Court found only those class members had standing to pursue their claim against TransUnion for failure to employ reasonable procedures to protect against innacuracies. *Id*. Although the remaining 6,332 class members claimed that they were at risk of future disclosure, the Supreme Court found that these class members lacked standing under Article III because TransUnion did not disclose these class members' reports to anyone. *Id*.

In assessing whether the risk of future harm can constitute an injury-in-fact under Article III, the Supreme Court distinguished between claims seeking injunctive relief and claims seeking monetary damages. When seeking *injunctive relief*, a plaintiff may rely on a potential *future injury* to establish standing, "at least so long as the risk of harm is

sufficiently imminent and substantial." *TransUnion*, 141 S.Ct. at 2210 (internal citations omitted). In a suit for damages, however, the mere risk of future harm, without more, cannot qualify as a concrete harm sufficient to establish standing. *Id*. at 2211. A plaintiff must show that the harm actually materialized. *Id*.

Here, Plaintiff contends he is "at risk" of having his information compromised someday. First Am. Compl. ¶ 143. Plaintiff seeks both injunctive relief and monetary damages, but he has failed to plead facts showing that he has standing to pursue either form of relief.

Regarding injunctive relief, Plaintiff has not pled facts that show he is at a "substantial and imminent" risk of identity theft. Importantly, the Supreme Court has instructed: "a person exposed to a risk of future harm may pursue *forward-looking*, injunctive relief *to prevent the harm from occurring*, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 141 S.Ct. at 2210 (internal citations omitted) (emphasis added). However, the Leaders Life data security incident occurred more than 10 months ago. Not only has Plaintiff failed to plead any facts showing that he suffered identity theft or some other harm resulting from that incident, but given the passage of time since the incident, Plaintiff cannot allege that he is at an imminent and substantial risk of suffering any such harm. Moreover, the First Amended Complaint does not specifically identify any "forward-looking" injunctive relief that could possibly further prevent any potential future harm stemming from the incident from occurring. *See TransUnion*, 141 S.Ct. at 2210 (internal citations omitted). The injunctive relief that Plaintiff requests relates to improvements that Plaintiff wants Leaders Life to make to its

data security. *See* First Am. Compl. ¶ 145, Prayer for Relief. Needless to say, future changes to Leaders Life's data security will have no impact on any harm that Plaintiff could potentially suffer from a data breach that already happened many months ago.

Regarding Plaintiff's claim for monetary damages, the mere risk of future harm, without more, cannot qualify as a concrete harm sufficient to establish standing. *Id*. at 2211. A plaintiff must show that the harm actually materialized. *Id*. Unlike *TransUnion*, this case does not involve the technical violation of a federal statute, but the alleged injuries are analogous. The Supreme Court likened the FCRA violation underlying the *TransUnion* plaintiffs' claimed injuries to the common law tort of defamation and explained that "there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *Id*. at 2209 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 344 (D.C. Cir. 2018)). In rejecting the argument that risk of future disclosure of a credit report could serve as a concrete harm constituting an injury-in-fact satisfying Article III, the Supreme Court agreed with the argument the defendant TransUnion advanced:

> [I]f an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm. If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages. If the risk of future harm does *not* materialize, then the individual cannot establish a concrete harm sufficient for standing[.]

*TransUnion*, 141 S.Ct. at 2211 (emphasis in original). Similarly, in this case, Plaintiff's information may have been accessible without authorization during the malware incident,

9

but no concrete injury exists until it can be proven that information was in fact actually accessed, and misused in some way.

Leaders Life's prior motion to dismiss the initial Complaint was based largely on the controlling *Transunion* opinion. After amending his Complaint in response to that motion, Plaintiff now attempts to ignore *Transunion*, which clearly requires Plaintiff to allege his personal information has already been misued to be eleigble for monetary damages; Plaintiff has not pled any new facts in the First Amended Complaint suggesting such harm has occurred.

Instead, Plaintiff argues the risk of future of identity theft "continues to be recognized by numerous circuit courts across the country as a concrete injury sufficient to establish Article III standing." First Am. Compl. ¶ 8. However, the purported authority for this propostion, cited in a footnote, consists of a string of cases from outside the Tenth Circuit that found a plaintiff had standing to pursue a data privacy class action, and each of the cited cases was decided before *TransUnion*. *Id*. n.3. Unlike the Supreme Court's decision in *TransUnion*, none of the cases cited by Plaintiff are binding on this Court. Moreover, to the extent these cases held that the risk of future injury is sufficient to establish standing, they must be reevaluated and disregarded in light of *TransUnion*'s contrary holding. *Compare TransUnion*, 141 S.Ct. at 2211 ("If the risk of future harm does *not* materialize, then the individual cannot establish a concrete harm sufficient for standing[.]") *with Galaria v. Nationwide Mut. Ins. Co.,* 663 F. App'x 384, 388 (6th Cir. 2016) (finding standing and noting that "it would be unreasonable to expect Plaintiffs to wait for actual misuse"); *Remijas v. Neiman Marcus Grp., LLC,* 794 F.3d 688, 694 (7th

Cir. 2015) (holding that plaintiffs' "allegations of future injury are sufficient to survive a 12(b)(1) motion"); *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 (11th Cir. 2021) (in case decided 22 days before *TransUnion*, holding that standing exists "when there is a sufficient risk of identity theft"); *McMorris v. Carlos Lopez & Associates, LLC,* 995 F.3d 295 (2d Cir. 2021) (in case decided two months before *TransUnion*, "holding that plaintiffs may establish standing based on an increased risk of identity theft or fraud following the unauthorized disclosure of their data"); *Attias v. Carefirst, Inc.,* 865 F.3d 620, 628 (D.C. Cir. 2017) (finding standing based on a "plausible allegation that plaintiffs face a substantial risk of identity fraud"); *Krottner v. Starbucks Corp.,* 628 F.3d 1139, 1143 (9th Cir. 2010) (finding standing because "the plaintiffs had alleged an act that increased their risk of future harm"). And to the extent these cases involve allegations of actual identity theft or fraud that had already occurred, they are inapposite, because Plaintiff has alleged no such harm. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.,* 892 F.3d 613, 622 (4th Cir. 2018) ("The Plaintiffs in these cases, on the other hand, allege that they have already suffered actual harm in the form of identity theft and credit card fraud.").

    To recap, Plaintiff does not have standing to seek injunctive relief because there is no "substantial and imminent" risk of harm that can be cured by "forward-looking" injunctive relief; and Plaintiff does not have standing to seek monetary damages because he has not already suffered harm in the form of identity theft, and the risk of future harm, without more, does not qualify as a concrete injury under Article III. For these reasons, Plaintiff's First Amended Complaint should be dismissed for lack of standing.

### 4.   Mitigation Efforts and Loss of Value in Personal Information Do Not Establish an Injury-in Fact Under Article III

Attempting to allege some type of redressable injury, Plaintiff also claims he was forced to spend time on mitigation efforts related to the risk of identity theft and suffered an alleged loss of value in his personal information. Neither alleged harm establishes standing under Article III.

Plaintiff contends he was injured due to spending "time on the telephone and sorting through his unsolicited emails, researching the Data Breach, exploring credit monitoring and identity theft insurance options in addition to the free service offered by Defendant, and self-monitoring his accounts." First Am. Compl. ¶ 54. Although the Tenth Circuit has not yet addressed this issue, other courts have found that mitigation efforts to prevent potential identity theft do not establish standing. *See, e.g., Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) (mere increased risk of identity theft and mitigation efforts are insufficient to establish standing); *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 526 (M.D. Pa. 2021) (rejecting argument that "prophylactic measures to avoid" identity theft confers standing). Other courts have found mitigation efforts to constitute an injury-in-fact "only when the harm [of future identity theft] is imminent." *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016). However, in light of the Supreme Court's pronouncement in *TransUnion* that mere risk of future harm, without more, cannot confer standing in a case seeking monetary damages, the rationale of *Lewert* and similar decisions no longer applies. *See TransUnion*, 141 S.Ct. at 2211.

12

Plaintiff also claims to have suffered injury "in the form of damages to, and diminution in, the value of his PII." First Am. Compl. ¶ 58. The Tenth Circuit has not addressed this issue, but other courts have found it an insufficient injury for Article III purposes. *See, e.g., Khan v. Children's National Health System*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (allegations of diminished value of personal information are insufficient); *In re Sci. Applications Int'l (SAIC)Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014) (same).

By failing to show a concrete injury-in-fact in any manner, Plaintiff lacks Article III standing, and the case should be dismissed in its entirety.

### B.  Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Based

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To state a plausible claim, the Plaintiff has the burden to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Arnold ex rel. Chesapeake Energy Corp. v. McClendon*, No. 11-986, 2012 WL 4483159, at *2 (W.D. Okla. Sept. 28, 2012) (internal citations and quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "Thus, plaintiffs must allege sufficient facts to 'nudge[ ] their claims across the line from conceivable to plausible.'" *Arnold*, 2012 WL 4483159, at *2 (quoting *Twombly*, 550 U.S. at 570).

In his First Amended Complaint, Plaintiff purports to represent a nationwide class of individuals affected by the Leaders Life data security incident and a subclass of

Maryland residents affected by the incident. However, Plaintiff has failed to plead sufficient facts to support any of the causes of action set forth in the Complaint.

### 1. Plaintiff Has Failed to State a Claim for Negligence

Even assuming Plaintiff had constitutional standing, his lack of actual damages prevents him from establishing a negligence cause of action. The First Cause of Action should be dismissed.

"The elements of a negligence claim in Oklahoma are as follows: (1) the existence of a duty owed by Defendant to Plaintiff to use ordinary care; (2) the breach of that duty; and (3) an injury proximately caused by the breach." *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1299, 1307-08 (N.D. Okla. 2000) (citing *Comer v. Preferred Risk Mut. Ins. Co.*, 991 P.2d 1006, 1010 (Okla.1999)). Oklahoma courts are clear that, for a tort claim to be cognizable, there must be an actual injury, one that is certain and not merely speculative. *See MBA Commercial Constr., Inc. v. Roy J. Hannaford Co.*, 818 P.2d 469, 470 (Okla. 1991). "It is elemental in the law of damages that negligence, unaccompanied by injurious result, does not give rise to liability." *Pahlka v. Chicago, R.I. & P. Ry. Co.*, 161 P. 544, 552 (Okla. 1916). "Alleging reasonable concern about an injury occurring in the future is not sufficient to allege an actual injury in fact." *Reece v. AES Corp.*, 638 F. App'x 755, 776 (10th Cir. 2016).

Similarly, in order to set forth a cause of action for negligence under Maryland law, Plaintiff must allege (1) that Leaders Life owed a legally cognizable duty to Plaintiffs; (2) that Leaders Life breached that duty; (3) a causal connection between the duty breached and the Plaintiff's injury; and (4) that Plaintiff incurred damages as a result. *Chassels v.*

*Krepps*, 235 Md. App. 1, 12 (2017) (*citing Jacques v. First Nat'l Bank*, 307 Md. 527, 531, 515 A.2d 756 (1986)). "[A]ctual damages are a prerequisite for liability in negligence cases." *Access Limousine Serv., Inc. v. Serv. Ins. Agency, LLC*, No. 15-3724, 2017 WL 3475669, at *4 (D. Md. Aug. 11, 2017) (*quoting Peroti v. Williams*, 267 A.2d 114, 119 (Md. 1970)).

Plaintiff's theory of injury is speculative. In asserting his negligence cause of action, Plaintiff's claimed injuries consist of future risk to his personal information, mitigation efforts to avoid identity theft, and the loss of the opportunity to determine how his information is used. First Am. Compl. ¶ 98. These are not actual injuries. For example, Plaintiff claims he suffered harm through "the theft and publication" of his information, but there are no allegations in the First Amended Complaint that anyone has in fact published or stolen his information. *Id*. Similarly, the First Amended Complaint refers to "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and unauthorized use," but even after amending his Complaint, Plaintiff does not specify that he has actually incurred any of these expenses. *Id*. If he had, Plaintiff would have explained how much he spent and what he spent it on. *Id*. All of Plaintiff's claimed injuries are speculative, and none qualify as actual damages under Oklahoma or Maryland law; Plaintiff has failed to set forth a cause of action for negligence.

### 2.   Plaintiff Has Failed to State a Claim for Breach of Implied Contract

Plaintiff entered into a contractual relationship with Leaders Life for the purchase of insurance; he did not enter into a contractual relationship with Leaders Life for the

purchase of data security. The Second Cause of Action for breach of implied contract should be dismissed.

Under Oklahoma law, "[a]s distinguished from an express contract, which is proved by an actual agreement, an 'implied contract' arises from the implication that a party did make such an agreement as, under the circumstances disclosed, he ought in fairness to have made." *Simpson Props., Inc. v. Oexco, Inc*., 916 P.2d 853, 856 (Okla. Civ. App. 1996) (internal citation and quotation marks omitted). Similarly, in Maryland, "[a]n implied contract is an agreement which legitimately can be inferred from intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261, 271 (2007) (internal citation and quotation marks omitted).

Plaintiff originally described the alleged contract as follows: "Plaintiff and Class Members would provide their PII in exchange for the insurance products and services provided by Defendant." Compl. ¶ 102. He now amends that description to state that the insurance products and services "include[ed] adequate data security and protection of Plaintiff's and Class Members' PII." First Am. Compl. ¶ 102. This remains a misleading characterization. What Plaintiff provided in exchange for insurance products and services was the payment of premium. That he supplied Leaders Life with personal information was merely incident to the transaction. *See Chambliss v. Carefirst, Inc*., 189 F. Supp. 3d 564, 572 (D. Md. 2016) ("[Plaintiffs] offer no factual allegations indicating that the prices they paid for health insurance included a sum to be used for data security, and that both parties understood that the sum would be used for that purpose."); *Irwin v. Jimmy John's*

*Franchise, LLC*, 175 F. Supp. 3d 1064, 1071-72 (C.D. Ill. 2016) ("Irwin paid for food products. She did not pay for a side order of data security and protection; it was merely incident to her food purchase[.]").

There was simply no meeting of the minds on the terms of any contractual relationship regarding data security. The Second Cause of Action should be dismissed.

### 3. Plaintiff Has Failed to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing

The covenant of good faith and fair dealing is implicit in contractual relationships. Under either Oklahoma law or Maryland law, however, a claim for breach of the covenant of good faith and fair dealing cannot stand as an independent cause of action. The Third Cause of Action should be dismissed.

"Every contract in Oklahoma contains an implied duty of good faith and fair dealing. *Wathor v. Mut. Assurance Adm'rs, Inc*., 87 P.3d 559, 561 (Okla. 2004) (internal citation omitted). A breach of that duty therefore results in contractual damages, "not independent tort liability." *Id*. (internal citation omitted). Similarly, "the covenant of good faith and fair dealing is not recognized as an independent cause of action in Maryland." *Roberson v. Ginnie Mae REMIC Tr. 2010 H01*, 973 F. Supp. 2d 585, 589 (D. Md. 2013) (internal citations omitted). "Instead, the duty of good faith and fair dealing is merely part of an action for breach of contract." *Id*. (internal citations omitted).

The covenant of good faith and fair dealing was implicit in Plaintiff's insurance contract with Leaders Life. Because neither Oklahoma law nor Maryland law recognizes

it as an independent tort, however, Plaintiff cannot assert a breach of the covenant of good faith and fair dealing as a separate cause of action from a breach of contract claim.

### 4. Plaintiff Has Failed to State a Claim under the Maryland Consumer Protection Act

Plaintiff's claim under the Maryland Consumer Protection Act ("MCPA") should be dismissed because he has not pled facts showing that Leaders Life engaged in an unfair or deceptive practice or a misrepresentation. He has also failed to show actual damages.

"To state a claim under the MCPA, a plaintiff 'must adequately plead that: (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury.'" *Clark v. Bank of America, N.A.*, 2020 WL 902457 (D. Md. 2020) (quoting *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018)). In federal court, a " party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Because MCPA claims sound in fraud, they are subject to Rule 9(b)'s heightened pleading standard. *Spaulding v. Wells Fargo Bank, N.A.,* 714 F.3d 769, 781 (4th Cir. 2013). "The particularity requirement exists to provide a defendant with sufficient notice of the misrepresentations alleged so that he can answer and defend himself." *Wells v. Johnson & Johnson*, No. 20-1301, 2021 WL 3578191, at *4 (W.D. Okla. Aug. 12, 2021) (internal citations omitted). To meet this requirement, a plaintiff must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof[.]" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). "When a plaintiff alleges a failure to disclose while under the duty to disclose, the

complaint should include at the very least an identification of the duty to disclose and the fact allegedly concealed." *Wells*, 2021 WL 3578191, at *4.

Plaintiff has not pled this claim with particularity. Plaintiff contends that Leaders Life engaged in an unfair or deceptive act through its alleged "known concealment, suppression and omission of material facts" regarding its data security. First Am. Compl. ¶ 129. But Plaintiff does not specify what material facts Leaders Life allegedly concealed. Instead, Plaintiff tries to repackage the alleged "failure to adopt reasonable practices in protecting and safeguarding" personal information as concealment, suppression, and omission of material facts. *Id*. ¶ 133. This does not constitute an unfair or deceptive practice or misrepresentation under the MCPA.

Moreover, in an action brought by a private party under the MCPA, the claimant may only recover damages for actual injury or loss. *McGraw v. Loyola Ford, Inc.*, 124 Md. App. 560, 576, 723 A.2d 502, 510 (1999). Plaintiff cannot show that he suffered any actual damages. The Fourth Cause of Action should be dismissed.

### 5.  Plaintiff Is Not Entitled to Declaratory or Injunctive Relief

In his final cause of action, Plaintiff seeks declaratory and injunctive relief. He is entitled to neither.

The Declaratory Judgment Act allows a court, in the case of an actual controversy, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been

determined by such judgment." 28 U.S.C. § 2202. The Tenth Circuit considers five factors

in deciding whether declaratory relief is appropriate:

> [1] whether a declaratory action would settle the controversy;
> [2] whether it would serve a useful purpose in clarifying the
> legal relations at issue; [3] whether the declaratory remedy is
> being used merely for the purpose of procedural fencing or to
> provide an arena for a race to *res judicata*; [4] whether use of
> a declaratory action would increase friction between our
> federal and state courts and improperly encroach upon state
> jurisdiction; and [5] whether there is an alternative remedy
> which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). "[T]here is no

requirement that a district court consider" all of these factors, "and no single factor in the

declaratory judgment calculus is determinative." *Hatton v. Combs*, 793 Fed. App'x 801,

805 (10th Cir. 2019).

Here, the first two factors—"whether a declaratory action would settle the

controversy" and "whether it would serve a useful purpose in clarifying the legal relations

at issue"—are most applicable. Plaintiff asks the Court to declare "(1) that Defendant's

existing security measures do not comply with its contractual obligations and duties of care

to provide adequate security, and (2) that to comply with its contractual obligations and

duties of care, Defendant must implement and maintain reasonable security measures" and

to order various remedial measures. First Am. Compl. ¶ 145. As previously noted, Plaintiff

has suffered no harm from the data security incident, and there is no indication that his

information was accessed by anyone. Moreover, ordering Leaders Life to implement

certain security measures would have no impact on the data security incident that already

occurred and is the subject of this lawsuit. As the Supreme Court explained in *TransUnion*,

a plaintiff may seek "*forward-looking*" injunctive relief to prevent a risk of harm that is "*imminent* and substantial." 141 S.Ct. at 2210 (emphasis added). Nothing in the First Amended Complaint indicates that any risk of harm from the November 2020 data security incident is imminent and substantial, and there can be no "forward-looking" injunctive relief that could cure any alleged harms flowing from that incident.

Plaintiff's First Amended Complaint now baldly claims that "a risk of a second breach to Defendant's system is imminent and substantial." First Am. Compl. ¶ 140. Of course, Plaintiff offers no factual support for this assertion, and this newly added language is apparently intended to address the Supreme Court's reminders in *Transunion* that any forward-looking injunctive relief sought must relate to an "imminent and substantial" risk of harm. 141 S. Ct. at 2197, 2190. Such transparent attempts to avoid dismissal are barred by federal pleading standards. *See Iqbal*, 556 U.S. at 678, *citing Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation"). Because equity does not support amorphous claims based on speculative incidents that may never occur, Plaintiff is not entitled to declaratory and injunctive relief, and the Fifth Cause of Action should be dismissed.

21

### C. Alternatively, Immaterial and Impertinent Allegations Should Be Stricken

If the Court does not dismiss the First Amended Complaint, it should strike the immaterial and impertinent allegations concerning identity theft that have nothing to do with the parties or facts of this case.

Rule 12(f) permits a court to strike immaterial and impertinent allegations from a pleading on its own or upon motion by a party. *See* Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 978 (N.D. Okla. 2017). Those are exactly the types of allegations Plaintiff has included in his First Amended Complaint. Starting on page 7 of the First Amended Complaint, Plaintiff devotes 22 paragraphs to the horrors of identity theft, citing otherwise inadmissible FBI statistics, government reports, news articles, and blog posts. *See* First Am. Compl. ¶¶ 24-45. None of this has anything to do with the facts at issue. These allegations are meant to lend weight to the alleged risk of future identity theft on which Plaintiff bases his case. Leaders Life believes *Transunion* bars claims like Plaintiff's that are presmised entirely on such speculative allegations, but if Plaintiff is allowed to proceed with any of his claims, he should be limited to presenting the facts of his experience and the Leaders Life data security incident, rather than questionable online commentary concerning unrelated incidents. Such immaterial and impertinent allegations serve no purpose but to to stoke prejudice, and should be stricken from the First Amended Complaint.

## IV.    CONCLUSION

For all the foregoing reasons, Defendant Leaders Life Insurance Company respectfully requests that Plaintiff's First Amended Complaint be dismissed in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the event the Court does not dismiss the First Amended Complaint, Leaders Life respectfully requests that it strike paragraphs 21-38 from the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f).

Dated: October 12, 2021                    Respectfully submitted,


/s/ Brian D. Blackstock
Kyle Sweet, OBA # 17711
Brian D. Blackstock, OBA #31943
**SWEET LAW FIRM**
24 West Park Place
Oklahoma City, OK 73103
kyle@sweetlawfirm.com
brian@sweetlawfirm.com

Claudia D. McCarron (*pro hac vice* forthcoming)
James F. Monagle (*pro hac vice* forthcoming)
Richard M. Haggerty (*pro hac vice* forthcoming)
**MULLEN COUGHLIN LLC**
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
cmccarron@mullen.law
jmonagle@mullen.law
rhaggerty@mullen.law

*Counsel for Defendant*